# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re

**SETA ROSE MAMMOLA**,                              Chapter 11
    Debtor                                     Case No. 10-15148-JNF


~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**KATHLEEN P. DWYER, CHAPTER 11
TRUSTEE,**
    Plaintiff
v.                                                 Adv. P. No. 11-1328
**ROCKLAND TRUST COMPANY,**
    Defendant


~~~~~~~~~~~~~~~~~~~~~~~~~~~~~


## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Plaintiff's Motion for Summary Judgment as to

Counts I, II and III of her three-count Complaint against Rockland Trust Company

("Rockland").  The Plaintiff (the "Chapter 11 Trustee") seeks the following relief:

> 1) a declaration that a mortgage executed by Seta Rose Mammola (the
> "Debtor"), as Trustee of The Mammola Way Trust, encumbering property
> located at 34 Mammola Way, Medford, MA ("Mammola Way"),was
> discharged and has no legal effect after the recording and filing of the
> discharge on May 1, 2007; or, in the alternative, a declaration that the
> mortgage is unperfected and avoided under 11 U.S.C. § 544(a)(3), and that
> the lien is preserved for the benefit of the estate pursuant to 11 U.S.C. § 551;
>
> 2) a declaration that payments made post-petition to Rockland from funds

1

of the bankruptcy estate were unauthorized post-petition transfers of estate funds that are voidable pursuant to 11 U.S.C. § 549 and an order requiring the turnover of those funds to the bankruptcy estate; and

3) an award of attorneys' fees and costs incurred in the adversary proceeding because of the Defendant's false and frivolous statement under oath in its proof of claim filed in this Chapter 11 case that its claim was secured by a mortgage.

Rockland filed an Opposition to the Chapter 11 Trustee's Motion, and the Court conducted a hearing on May 2, 2012. Following the hearing, the parties submitted supplemental briefs and the Chapter 11 Trustee submitted a Title Examination prepared by McDonough & Novak, Inc. with respect to Mammola Way.

The Court finds that there are no genuine issues of material facts in dispute, although the Chapter 11 Trustee and Rockland construe the facts differently. *See* Fed. R. Civ. P. 56(a), made applicable to this proceeding by Fed. R. Bankr. P. 7056. The issues presented include whether the Chapter 11 Trustee is charged with constructive notice of a defect in a discharge of a mortgage granted to Chart Bank, a Cooperative Bank on February 13, 2004 (the "Discharge"), and whether the defect was apparent on the face of the document.. The Court now makes its findings of fact and rulings of law in accordance with Fed. R. Bankr. P. 7052.

## II. FACTS

The Debtor is the trustee of, and the holder of a 50% beneficial interest in, the Mammola Way Realty Trust, a nominee trust, u/d/t dated January 30, 2001 (the "Trust") and recorded in the Middlesex South District Registry of Deeds at Book 32304, Page 49, and

filed in the Middlesex District of the Land Court as Document No. 1161727, Certificate of Title No. 220575. She filed a Chapter 11 bankruptcy petition on May 12, 2010; Kathleen Dwyer is the duly appointed Chapter 11 Trustee.

At the commencement of her bankruptcy case, the Debtor held title, as trustee of the Mammola Way Realty Trust, to a single family residence known as Mammola Way. A portion of the Mammola Way property is registered land, as evidenced by a "Transfer Certificate of Title No. 220575." The Chapter 11 Trustee sold Mammola Way on September 22, 2011 generating proceeds, a portion of which are the subject of the Chapter 11 Trustee's adversary proceeding. Because the Trust is a nominee trust, the Debtor's 50% beneficial interest in the Trust is property of her bankruptcy estate. *See* 11 U.S.C. § 541(a).

Prior to the commencement of her bankruptcy case, the Debtor, as trustee of the Trust, on January 30, 2001, granted a mortgage on Mammola Way in favor of Charter Bank, a Cooperative Bank, to secure a note in the original principal amount of $100,000. The mortgage was recorded in the Middlesex South District Registry of Deeds in Book 32304, Page 55 and in the Middlesex District of the Land Court as Document No. 1161728, Certificate of Title No. 220575 (the "2001 Mortgage").

On December 3, 2001, Charter Bank changed its name to Chart Bank.

On February 12, 2002, the Debtor as trustee of the Trust, and Chart Bank entered into a Mortgage Modification Agreement pursuant to which they modified the 2001 Mortgage by changing the amount secured by the 2001 Mortgage from $100,000 to $125,000. The Mortgage Modification Agreement was recorded on February 19, 2002 in the Middlesex

3

South District Registry of Deeds in Book 34851, Page 180 and in the Middlesex District of the Land Court as Document No. 1200368, Certificate of Title No. 220575.

On February 13, 2004, the Debtor, as trustee of the Trust, granted a mortgage on Mammola Way in favor of Chart Bank, a Cooperative Bank, to secure a loan in the original principal amount of $300,000.00 (the "2004 Mortgage"). The 2004 Mortgage was recorded in both the Middlesex South District Registry of Deeds at Book 42071, Page 239, and in the Middlesex District of the Land Court as Document No. 1310446, Certificate of Title No. 220575.

On April 4, 2005 Chart Bank merged into and was subsequently operated as part of Benjamin Franklin Bank.

On July 3, 2006, the Debtor, as the trustee of the Trust, granted a Home Equity Line of Credit Mortgage on Mammola Way to Mt. Washington Cooperative Bank to secure a note permitting her to borrow up to $150,000 (the "2006 Mortgage"). The 2006 Mortgage was recorded in the Middlesex South District Registry of Deeds at Book 47754, Page 287 and in the Middlesex District of the Land Court as Document No. 1415794, Certificate of Title No. 220575. The Debtor used the proceeds of the 2006 Mortgage to pay, in full, the 2001 Mortgage to Charter Bank, as modified, as evidenced by a HUD Settlement sheet dated June 23, 2006 which reflects a payment of $125,666.98 to Benjamin Franklin Bank.

On August 8, 2006, Benjamin Franklin Bank, successor to Chart Bank, a Cooperative Bank, Successor to Charter Bank, a Cooperative Bank, by and through its Senior Vice President, Rose M. Buckley, executed a Discharge of the 2004 Mortgage. The Discharge

4

was recorded nine months later, on May 1, 2007, in the Middlesex South District Registry

of Deeds at Book 49380, Page 144, and filed in the Middlesex District of the Land Court as

Document No. 1442098. The Discharge sets forth the following:

> BENJAMIN FRANKLIN BANK, Successor to CHART BANK, a Cooperative
> Bank, Successor to Charter Bank, A Cooperative Bank, holder of a mortgage
>
> from      Mammola Way Realty Trust, *Trustee Seta Mammola*
>
> to said      CHARTER BANK, A COOPERATIVE BANK
>
> dated      January 30, 2001
>
> recorded with the Middlesex South Registry of Deeds & Middlesex District
> of the Land Court
>
> Instrument #309      acknowledges satisfaction of the same.
>
> Land Court Doc # ~~1161728~~ *1310446 AND* Book *42071 PAGE 239*
>
> In witness whereof, the said Benjamin Franklin Bank, has caused its
> corporate seal to be hereto affixed and these presents to be signed in its name
> and behalf by Rose M. Buckley, its Senior Vice President, this 8th day of
> August, A.D. 2006.[1]

The Discharge was properly notarized and contained the correct property address, namely

34 Mammola Way, Medford, MA.

According to the records of the FDIC, on May 9, 2009, two years after the recording

and filing of the Discharge, Benjamin Franklin Bank merged into and was subsequently

operated as part of Rockland Trust Company.

---

[1] The italicized information was hand written on the Discharge form, together
with the underlining as shown.  The strikeout of the Land Court Document number was
also done by hand.

As noted above, the Debtor filed a voluntary petition under Chapter 11 on May 12, 2010. Approximately one year later, on May 17, 2011, Rockland filed a proof of claim with this Court, docketed as #15 on the claims register, in which it stated that it had a secured claim based on the 2004 Mortgage as the security instrument.

On or about July 15, 2011, the Chapter 11 Trustee executed a purchase and sale agreement for the sale of Mammola Way, and, on July 21, 2011, she filed a Motion for Authorization to Sell, which this Court granted by order dated August 16, 2011. The Court amended its order on September 7, 2011 to acknowledge that the amount due Rockland pursuant to the 2004 Mortgage was in bona fide dispute and to provide that $300,000 of the sale proceeds would be held in escrow by the Chapter 11 Trustee pending a determination of the validity of the 2004 Mortgage by this Court.

In preparation for the sale, the closing attorney for the Buyers' lender requested a title rundown on the property. The title report showed older mortgages for which no discharges had been recorded, but no mortgages granted to or held by Rockland. It also showed the discharge of the 2004 Mortgage to Chart Bank. Rockland's Vice President, Wendy Zanellato, admitted in her affidavit that "[i]n the Index of the Middlesex County South District Registry of Deeds, the Discharge is erroneously linked to the 2004 Mortgage, however the 2001 Mortgage is undischarged of record in the Index."

According to the Chapter 11 Trustee in her affidavit, after the Debtor filed her Chapter 11 petition, on May 12, 2010, the Debtor as trustee of the Trust made a payment in the amount of $2,569.18 to Rockland; thereafter the Debtor-in-Possession and the

Chapter 11 Trustee made payments of $17,474.50 to Rockland, for a total of $20,043.68 in

post-petition payments.   The Chapter 11 Trustee represented that the payments were not

authorized by the Court and payments totaling at least $18,759.09 were made with funds

of the bankruptcy estate. The payments were made to Rockland on account of the 2004

note, which the Chapter 11 Trustee maintains is an unsecured obligation because of the

Discharge recorded with respect to the 2004 Mortgage.   Rockland did not contest the

amount of the payments it received but raised a judicial estoppel argument because the

Chapter 11 Trustee represented in her sale motion and in several iterations of a disclosure

statement that Mammola Way was encumbered by the 2004 Mortgage and that the 2004

Mortgage would be paid in full from the proceeds of the sale.

   Prior to the filing of the Debtor's Chapter 11 case, Rockland never commenced an

action for reinstatement of the 2004 Mortgage.

   The Court takes judicial notice of its docket and orders.[2] On May 18, 2010, this Court

heard the Debtor-in-Possession's "Emergency Motion for Interim and Final Authority to

Use Cash Collateral and Granting Adequate Protection" and entered an order authorizing

her to use cash collateral, including alleged cash collateral of Rockland, through June 22,

2010. In the Emergency Motion, the Debtor stated:

> Mammola Way consists of a single family residence located at 34 Mammola
> Way, Medford, Massachusetts. The Debtor is the Trustee under Declaration
> of Trust dated January 30, 2001 and recorded in the Middlesex County

---

[2] The Court may take judicial notice of its docket. *See* In re Mailman Steam
Carpet Cleaning Corp., 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court
appropriately took judicial notice of its own docket.").

District of the Land Court as Document No. 1161727, Certificate of Title No. 220575. The Debtor also possesses a ⅓ interest in the trust [sic]. The property was acquired by the trust on January 30, 2001, for the sum of $692,000.00. Mammola Way has a fair market value of $700,000.00 based upon an appraisal completed on May 11, 2010 by A.C. Klein Appraisal Associates, retained by the Debtor. The property contained within the Mammola Way [sic] is encumbered by a mortgage in favor of Rockland Trust Company with indebtedness thereunder of approximately $272,865.00. It is the Debtor's intention to retain this property.

The Debtor, as adequate protection, proposed to provide Rockland with a replacement lien of the same priority, validity and enforceability as its existing lien and to make current monthly mortgage payments. She attached a budget to her Emergency Motion which provided for monthly payments of $2,350 to Rockland.  It is unclear whether Mammola Way produced cash collateral and whether it was the Debtor's residence.[3]  Moreover, the Court did not enter an order specifically authorizing the monthly payment to Rockland Trust.  Nevertheless, the Court, in its proceeding memorandum dated May 18, 2010, granted the Emergency Motion. Subsequent budgets filed by the Debtor, however, did not list the Mammola Way property or disclose any payments to Rockland.  On October 4, 2010, approximately five months after the commencement of the Debtor's Chapter 11 case, at a continued hearing on the Debtor's Emergency Motion, the Court sua sponte appointed a Chapter 11 Trustee.

On March 2, 2011, the Debtor and the Chapter 11 Trustee filed a Joint Disclosure Statement and Joint Plan of Reorganization.  In the Joint Disclosure Statement, they

---

[3] The Debtor listed a Burlington, Massachusetts address on her petition, but claimed a homestead exemption in Mammola Way pursuant to 11 U.S.C. § 522(d)(1).

8

designated Rockland as the holder of a Class IV claim, stating:

> This Class consists of the secured claim asserted against the Debtor by Rockland Trust Company ("Rockland"). Rockland is the holder of a first mortgage on Mammola Way with an outstanding obligation in the approximate amount of $260,000.00 inclusive of all fees and costs. The mortgage is current. Mammola Way has an estimated fair market value of $700,000.00.
>
> As of the Filing Date, the Debtor was indebted to Rockland in the principal amount of $272,865.00 with twenty-four (24) years remaining to maturity. The Debtor intends to sell this property to fund her Plan. The Debtor will pay this claim in full from the proceeds of the sale at closing. The claim in Class IV is not impaired under the Plan and is not entitled to vote on the Plan.

On April 14, 2011, the Chapter 11 Trustee and the Debtor filed a Joint Amended Disclosure Statement and a Joint Amended Plan.  The proposed treatment of Rockland's claim did not change.

On June 10, 2011, after it filed its proof of claim, Rockland filed an objection to the First Amended Joint Plan in which it asserted that "[t]he Debtor is in postpetition payment arrears on the Note having failed to make payments on the Note for the January, 2011 payment forward."  Rockland asserted that the plan failed to provide for the payment of postpetition arrears and to provide for monthly payments going forward in violation of 11 U.S.C. § 1123(a)(5)(G)."  Shortly thereafter, the Chapter 11 Trustee filed, on July 21, 2011, her Motion for Order Authorizing Private Sale of Mammola Way, in which she stated, "[o]n information and belief" that Mammola Way was subject to a mortgage in favor of Rockland."  One day before the entry of the amended sale order, the Chapter 11 Trustee, on September 6, 2011, filed an objection to Rockland's proof of claim, which Rockland had

filed on May 17, 2011.

On October 28, 2011, the Chapter 11 Trustee and the Debtor filed a Second Amended Joint Disclosure Statement and Second Amended Joint Plan, stating "[t]he property held by the Mammola Way Realty Trust was encumbered by a mortgage in favor of Rockland Trust Company with indebtedness thereunder of approximately $272,865.00. This property has since been sold by the Chapter 11 Trustee for $768,500.00 on September 22, 2011."  In the amended disclosure statement, the parties designated Rockland's claim as a Class III claim and indicated the following:  "Based on the discharge filed by Benjamin Franklin Bank (predecessor to Rockland Trust) in 2006, Rockland does not hold a secured claim on this property. The Claim in Class III is not impaired and is not entitled to vote on the Plan." Rockland objected to the amended disclosure statement.  The Court continued the Joint Motion to Approve Second Amended Joint Disclosure Statement and Plan until this adversary proceeding is resolved.

## III. DISCUSSION

### A. <u>Summary Judgment Standard</u>

The Chapter 11 Trustee, as the moving party, has the burden of establishing the absence of a genuine issue of material fact.  *See* <u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760, 762 (1st Cir. 1994); Fed. R. Civ. P. 56(a).  Once the movant has satisfied her initial burden, the burden then shifts to the nonmovant to establish the existence of at least one question of fact that is both genuine and material, particularly where the Massachusetts Land Court, Department of the Trial Court, in <u>Sand Canyon Mortg. Corp. v. Flammia</u>, No.

08 Misc 383813, 2010 WL 5550670 (Mass. Land Ct. Dec. 30, 2010), observed "[o]ne claiming

that another is not a bona fide purchaser has the burden of proof." 2010 WL 5550670 at *3

(citing Bd. of Selectmen of Hanson v. Lindsay, 444 Mass. 502, 509–10, 829 N.E.2d 1105

(2005)).

B. Applicable Law: Count I

By virtue of 11 U.S.C. § 541(a)(3) and (4), of the Bankruptcy Code, the Debtor's

bankruptcy estate includes any interest in property that the trustee recovers or preserves

for the benefit of the estate under 11 U.S.C. §§ 550 and 551 of the Bankruptcy Code,

including property recovered by exercise of the trustee's "strong-arm" powers under §

544(a)(3). Section 544(a)(3) provides:

> (a) The trustee shall have, as of the commencement of the case, and *without regard to any knowledge of the trustee* or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by — . . .
>
>> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3) (emphasis supplied). While the Bankruptcy Code provides that the

trustee shall enjoy the rights and powers of a bona fide purchaser, those rights and powers

are defined by the law of the state where the property is located; in this case the law of

Massachusetts. *See* Butner v. United States, 440 U.S. 48 (1979); Stern v. Cont'l Assurance Co.

(In re Ryan), 80 B.R. 264, 266 (D.Mass.1987) ,*aff'd*, 851 F.2d 502 (1st Cir.1988) (the rights and

powers of a bona fide purchaser of real property are determined by the law of the state where the property is located).

By virtue of § 544(a)(3), the trustee is deemed to be a bona fide purchaser regardless of any knowledge he may have.  In <u>Stern v. Cont'l Assurance Co. (In re Ryan)</u>, 851 F.2d 502 (1st Cir. 1988), the United States Court of Appeals for the First Circuit explained the various types of notice, in addition to actual notice, concluding that actual notice does not bind the trustee due to the language ("without regard to any knowledge of the trustee . . . "), as follows:

> "Notice" is sometimes broken down into various types: constructive, actual, record, implied, imputed, inquiry, etc. The classifications of notice employed in Vermont case law and in many of the treatises are often confusing and seemingly contradictory. *See* 5 H. Tiffany, Law of Real Property § 1284 (B. Jones ed. 1939) (hereinafter Tiffany's Real Property ) (noting that "the cases and textbooks are absolutely lacking in harmony"). A helpful formulation, however, appears in Tiffany's Real Property. Separating notice into two main types, actual and constructive, the treatise continues,

>> It would seem that one might properly be said to have actual notice when he has information in regard to a fact, or information as to circumstances an investigation of which would lead him to information of such fact, while he might be said to have *constructive notice* when he is charged with notice by a statute or rule of law, irrespective of any information which he might have, actual notice thus involving a mental operation on the person sought to be charged, and *constructive notice* being independent of any mental operation on his part.

> 5 Tiffany's Real Property § 1284, at 50 (emphasis added). Thus "constructive notice" is not really "notice," as that word is commonly used, at all. Instead, constructive notice is a positive rule of state law that permits the prior purchaser to gain priority over a latter purchaser, regardless of whether the latter purchaser really knows of the prior purchase.

12

Constructive notice is an essential element of the land recording system: if a deed is properly recorded, all future purchasers have constructive knowledge of the deed. *See* 4 *American Law of Property* § 17.17. A purchaser, therefore, can protect his interest by the act of recording his deed of purchase. To clarify, we present three examples of actual and constructive notice: 1) [sic] a subsequent purchaser has actual notice when he knows of the existence of a prior, unrecorded deed, Gilchrist v. Van Dyke, 63 Vt. 76, 21 A. 1099 (1890); he has constructive notice (whether or not he has actual knowledge) of a prior deed if that deed is properly recorded, Tomasi v. Kelley, 100 Vt. 318, 322, 137 A. 196 (1927); and he has both actual and constructive notice if he knows of the existence of a properly recorded deed.

In re Ryan, 851 F.2d at 506-07. The First Circuit Court of Appeals added:

A term sometimes used as a third and distinct type of notice is "inquiry notice." But we do not believe "inquiry notice" is a type of notice separate from "actual" or "constructive" notice. Rather, it is a corollary of both types. *See* 5 Tiffany's Real Property § 1285 (inquiry notice as a form of actual notice); 4 American Law of Property § 17.11, at 565 (inquiry notice as a form of constructive notice). Inquiry notice follows from the duty of a purchaser, when he has actual or constructive knowledge of facts which would lead a prudent person to suspect that another person might have an interest in the property, to conduct a further investigation into the facts. The most common type of "inquiry notice" is present when some person other than the grantor is in actual possession of the property. In that situation, the purchaser is charged with constructive knowledge of this possession; as a result, the purchaser is "on inquiry" to determine whether the possessor has some interest in the property. *See* 4 *American Law of Property* § 17.12; 5 Tiffany's Real Property § 1287. *See also* McCannon v. Marston, 679 F.2d 13 (3d Cir.1982) (holding a bankruptcy trustee to constructive/inquiry notice); In re Probasco, 839 F.2d 1352 (9th Cir.1988) (similar).

In re Ryan, 851 F.2d at 507 (footnote omitted).

In Gray v. Burke (In re Coletta Bros. of N. Quincy, Inc.), 172 B.R. 159, 163 (Bankr. D. Mass. 1994), the court determined that inquiry notice was a species of actual notice and does not bind the trustee. The court in Lassman v. OneWest Bank, FSB (In re Swift), 458 B.R. 8, 13 (Bankr. D. Mass. 2011), recognized that "a trustee's ability to avoid a transfer is

subject to constructive knowledge.").

C. Analysis: Count I

The decision in Collins v. Bank of New England-West, N.A. (In re Daylight Dairy Prods., Inc.), 125 B.R. 1 (Bankr. D. Mass. 1991), is on point.  In that case, Bank of New England-West, N.A. (the "Bank"), the holder of a mortgage from the debtor, Daylight Dairy Products, Inc., mistakenly recorded a discharge of a mortgage it held on property owned by the debtor.  The Chapter 11 trustee filed a complaint seeking to take the property free of the Bank's mortgage pursuant to 11 U.S.C. § 544(a)(1) and (3), as well as the return of payments on the mortgage debt made by the debtor to the Bank both before and after the filing of its bankruptcy petition.  Id. at 2.  In Daylight Dairy, the Bank executed and acknowledged a discharge of its mortgage on March 31, 1987, which discharge was recorded on November 3, 1987. When the debtor filed its petition, it listed the Bank as the holder of claim secured by a mortgage.  Between the date that the Bank executed the discharge and recorded it, another creditor, Agri-Mark, on July 29, 1987, recorded a mortgage on the same property which provided:  "the 'premises are subject to' the Bank's mortgage." Id.

According to the court, the Bank contended that the records raised a question as to why Agri-Mark's mortgage would be made subject to the Bank's mortgage if a discharge of the Bank's mortgage had already been executed, adding:  "Massachusetts law requires any purchaser or lien creditor, and the Trustee standing in his shoes, to make diligent inquiry to find the answer . . . [and] . . . [t]hat inquiry . . . should have been made of the

14

Bank, and if made it would have led to discovery of the mistake." <u>Id.</u> at 3. The court, citing

<u>In re Ryan</u>, 851 F.2d at 507, rejected the Bank's argument, stating:

> There are two flaws in the Bank's argument. First, Massachusetts law does not recognize inquiry notice of unrecorded deeds or mortgages. In Massachusetts, an unrecorded deed or mortgage is valid only against the grantor, his heirs and devisees and "persons having actual notice of it." Mass. Gen. L. ch. 183, § 4. The phrase "actual notice" is interpreted by the Massachusetts courts to exclude inquiry notice even when there is a reference to a party's property interest in the records which should be examined in a title search. In <u>Tramontozzi v. D'Amicis</u>, 344 Mass. 514, 183 N.E.2d 295 (1962), the probate inventory in the estate of a prior owner contained a notation referring to a mortgage which was never recorded. The court held that this did not provide the required "actual notice." To the same effect is <u>McCarthy v. Lane</u>, 301 Mass. 125, 16 N.E.2d 683, 685 (1938), where the court denied any effect to a reference in the chain of title to the predecessor of a party. It equated "actual notice" to knowledge, stating:

>> Moreover, for aught we know there may have been parol evidence clearly indicating that the petitioner did not have actual notice of any prior unrecorded deed affecting the land which he sought to register.

> 301 Mass. 125, 129, 16 N.E.2d 683.

> Although Massachusetts law does not recognize the doctrine of inquiry notice under § 4, the cases give us some idea of how the Supreme Judicial Court would apply the doctrine. <u>Richardson v. Lee Realty Corp.</u>, 364 Mass. 632, 307 N.E.2d 570 (1974), involved a question of inquiry notice, not of an unrecorded deed or mortgage under § 4, but of facts contained in papers on file in a law suit leading to a sheriff's sale. It was contended that the suit papers indicated such lack of opposition on the part of an executor as to amount to a breach of the executor's fiduciary obligations and hence a defect in the title. The court observed that it "need not decide whether the strict standard of actual notice applicable as to unrecorded instruments pursuant to Mass. Gen. L. ch. 183, § 4 is applicable to matters disclosed of record but not within the scope of that section."<u>Id.</u>, 364 Mass. at 635, 307 N.E.2d at 573. It concluded that under the doctrine of inquiry notice the suit papers gave no notice of the executor's default because there may have been no defense to the action. There is therefore no inquiry notice of a defect in title from

matters of record which are logically consistent with facts supporting an absence of any defect. That is the case here.

In re Daylight Dairy Prods., Inc., 125 B.R. at 3-4. The court also rejected the Bank's reliance

on Maine Nat'l Bank v. Morse (In re Morse), 30 B.R. 52 (B.A.P. 1st Cir. 1983), a decision

which also involved the mistaken execution and recording of a mortgage discharge. In

Morse, the bank initiated foreclosure proceedings shortly after recording the discharge of

its mortgage and recorded a certificate of foreclosure with the real estate records.

According to the court in Daylight Dairy,

> The Maine statute, like that of Massachusetts, made unrecorded mortgages only effective against third parties having "actual notice" thereof. Me. Rev. Stat. tit. 33 § 201. The bankruptcy appellate panel nevertheless ruled that the recorded certificate of foreclosure gave inquiry notice concerning the mistaken discharge. The panel did so, however, in reliance upon decisions of the Supreme Judicial Court of Maine which apparently construe the phrase "actual notice" quite differently from the Massachusetts court. *See, e.g.*, Hopkins v. McCarthy, 121 Me. 27, 29, 115 A. 513, 515 (1921) ("actual notice is that which one who is put on a trail is duty bound to seek to know, even though the track or scent leads to knowledge of unpleasant and unwelcome facts"). The panel in Morse concluded that under the law of Maine there is actual notice of an unrecorded instrument if the record discloses facts sufficient to incite an inquiry which should lead to the notice. Whether that is a blurring of constructive and actual notice, and whether the Maine decisions support this proposition, is not before me. I am concerned with the law of Massachusetts; its decisions construe the recording statute to exclude inquiry notice.

In re Daylight Dairy Prods., Inc., 125 B.R. at 4. *See also* In re Swift, 458 B.R. at 13 (relying

upon Daylight Dairy and noting that once discharged, an unrecorded mortgage is invalid

as to third parties without actual notice of it pursuant to Mass. Gen. Laws ch. 183 § 4);

Tomsic v. Beaulac (In re Beaulac), 298 B.R. 31, 35 (Bankr. D. Mass. 2003) ("Under

Massachusetts law the recording of a mortgage discharge is conclusive evidence of the release of the encumbrance on the mortgage property. This rule applies even as to assignees of the mortgage, if the assignment is not duly recorded prior to the recording of the mortgage discharge."). *But see* Resolution Trust Corp. v. Kornet, No. 168873, 1994 WL 16195048 (Mass. Land Ct. Aug. 2, 1994)(holding that where individual held title to property as trustee but gave mortgage to bank in her individual capacity, a title reference on the mortgage to the deed into her as trustee provided constructive notice that the mortgage was supposed to be from the individual as trustee or at the least that the holder of a subsequent interest would not be a bona fide purchaser).

In Sand Canyon Mortg. Corp. v. Flammia, 2010 WL 5550670 (Mass. Land Ct. Dec. 30, 2010), the court determined that "A purchaser has 'no duty of inquiry . . . when there are matters of title which are at most ambiguous concerning some possible impropriety which, if were known by the purchaser, would affect his title.'" Id. at *3 (citing Richardson v. Lee Realty Corp., 364 Mass. 632, 635, 307 N.E.2d 570 (1974); and Dalessio v. Baggia, 57 Mass. App. Ct. 468, 783 N.E.2d 890 (2003), *review denied,* 439 Mass. 1107 (2003), in which the court declined to impute constructive notice to a mortgagee of an out-of-chain conveyance made by defendant-mortgagor as trustee when the locus was held by defendant and his wife, despite more than 200 conveyances of the locus by the defendant individually and as trustee). In Richardson, the Supreme Judicial Court stated the following which is apt for purposes of resolving the present dispute:

Notice requirements are also a consequence of the intent of the registry laws

17

> to establish a record system on which purchasers can rely. '(P)urchasers
> should not be required to look beyond the registry of deeds further than is
> absolutely necessary.' Swasey v. Emerson, 168 Mass. 118, 120, 46 N.E. 426
> (1897). In our decisions concerned with notice of circumstances disclosed of
> record we have indicated that no duty of inquiry results from the recital of
> a fact or facts which might or might not, according to the circumstances, be
> consistent with fraud or other disabling circumstance.

Richardson, 364 Mass. at 635. See also Ostrander v. Brown (In re Housey), 409 B.R. 611, 620-

21 (Bankr. D. Mass. 2009)(citing Assessors of Boston v. John Hancock Mut. Life Ins. Co., 323

Mass. 242 (1948), for the proposition that purchasers are not required to examine files or

indices extraneous to the official records, even if available at the registry of deeds); In re

Dlott, 43 B.R. 789, 794 (Bankr. D. Mass. 1983).

Based upon the foregoing authorities, the Court concludes that the Chapter 11

Trustee has sustained her burden with respect to § 544(a)(3). Rockland does not hold a

secured claim and its equitable lien is preserved for the benefit of the estate. Rockland's

reliance on Swan v. Mass. Bay Transp. Auth., No. 313413, 2009 WL 1914779 (Mass. Land

Ct. July 6, 2009), is misplaced. In that case, the court concluded that the Swans, buyers of

property that had been taken by eminent domain, had constructive notice of the order of

taking when they purchased the parcel because the deed to them referenced a plan which

showed a disputed right of way belonging to the Commonwealth, even though the right

of way had ceased to exist by virtue of an earlier filed abandonment. The court stated:

> Title examination at the time of the Swans' purchase should have, under any
> reasonable view of the record title facts, paid attention to the state of title of
> the Right of Way, on which the conveyed land bounded, and by which it was
> described with reference to the recently prepared January 2001 plan. It was
> incumbent upon the buyers to take note of the referenced plan's attribution

18

of ownership of the disputed Right of Way to the Commonwealth, and to seek out the relevant recorded instruments bearing on the identity of the true owner of the strip. This strip was land abutting the parcel Turski was granting to the Swans, and the record sufficiently shows that determination of the title to this abutting strip was an integral part of the steps prudent conveyancing practice would require in such a transaction. Any such search, if diligent in the least, would have found the recorded 1996 Order of Taking. It was the obvious source, in the Registry of Deeds, of the Commonwealth's claim of title to the former railroad track which bordered the parcel the Swans were acquiring.

2009 WL 1914779 at * 6.

The Court concludes that the reference to the 2001 Mortgage in the Discharge coupled with the reference to the Book and Page numbers applicable to the 2004 Mortgage did not provide constructive notice to the Chapter 11 Trustee of a defect in the Discharge, which would warrant denial of her Motion for Summary Judgment on Count I. In fact, the discrepancies are analogous to the defects in acknowledgments in recorded mortgages. *See* Agin v. Morg. Elec. Registration Sys., Inc. (In re Giroux), No. 08-1261, 2009 WL 1458173 at *4-5 (Bankr. D. Mass. May 21, 2009), *aff'd,* 2009 WL 3834002 (D. Mass. Nov 17, 2009) (stating "[n]umerous federal courts have ruled that the omission of the grantor's name or the mortgagor's name in an acknowledgment is a material defect in the acknowledgment, and, as a consequence, those courts have permitted estate representatives to avoid improperly acknowledged mortgages under 11 U.S.C. § 544.").

In view of the First Circuit's definition of constructive notice (namely when a trustee is charged with notice by a statute or rule of law, irrespective of any information which she might have), and the decisions cited above, the Court concludes that the Chapter 11 Trustee

19

cannot be charged with constructive notice that Benjamin Franklin Bank, Rockland's

predecessor, erroneously discharged the 2004 Mortgage identified as Document No. 310446

filed in the Middlesex District of the Land Court and located at Book 42071, Page 239 and

recorded in the Middlesex South District Registry of Deeds.  In this regard, Mass. Gen.

Laws ch. 185, § 54C provides:  "The recordation of a duly executed and acknowledged or

proven discharge by a mortgagee, mortgage servicer or note holder shall constitute a

discharge of the mortgage and a release of the lien created by the mortgage on the

mortgaged premises. . . ."  Further, Mass. Gen. Laws ch. 183, § 154(b) provides in pertinent

part:

> If a discharge is executed by a person who is not the holder of record at the
> time the discharge is recorded, the recorded discharge shall become
> conclusive when an assignment of mortgage from the then record holder or
> holders to that person is thereafter recorded. A discharge shall contain the
> street address of the mortgaged property, the book number and page
> number or the land court document number and *recording date of the
> mortgage*, and the name of the original mortgagor; but, the failure to include
> the information shall not affect the validity of the instrument. This section
> shall apply notwithstanding section 3-116 of chapter 106.

In the instant case, the Discharge complied with statutory prerequisites, except that the

recording date of the mortgage and the mortgage appearing at Book 42071, Page 239 were

different,[4] but that mistake could not be detected without looking beyond the registry of

---

[4] *See* REBA TIT. STD. NO. 21 which provides:

A title is not defective by reason of:

> (1) The omission or addition of a middle or first initial or
> name of an individual or minor variation in the spelling of
> names;

deeds to the actual documents.  *See* <u>Richardson v. Lee Realty Corp.</u>, 364 Mass. at 635.

Nevertheless, a title examination submitted by the Trustee as well as the Memoranda of

Encumbrances accompanying the Transfer Certificate of Title attached as Exhibit A to the

Chapter 11 Trustee's affidavit establish that the $300,000 mortgage executed by the Debtor

as trustee in favor of Chart Bank was discharged.  Accordingly, the Court shall enter

summary judgment on Count I in favor of the Chapter 11 Trustee.

---

(2) The change of the name of a person as a result of marriage, or judicial change of name (in the latter case, reference should be made to the court and date of judgment);

(3) Minor variations from the correct name of a corporation, trust, limited partnership, limited liability company, limited liability partnership or other legal entity, such as the omission or addition of "The" or the interchange of the long form entity name with the abbreviated form;

(4) Inconsistencies in, or lack of dates of, execution and acknowledgment;

(5) Minor errors in area or in distances of bounds or the omission of one bound or incorrect compass points in a description, especially if the correct lot number and plan reference or reference to title are included in the description; or

(6) The omission of, or an erroneous reference to, either the date or the record reference (but not both) to a mortgage in the case of an assignment, partial release, or discharge of such mortgage.

D. <u>Count II</u>

Count II is predicated upon a determination that Rockland does not hold a secured claim by virtue of the 2007 discharge of the 2004 Mortgage by its predecessor and lack of court authority.  The Chapter 11Trustee relies upon section 549(a) of the Bankruptcy Code which provides:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate–

(1) that occurs after the commencement of the case; and
(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
 (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).  Rockland defends the Chapter 11 Trustee's Motion for Summary Judgment, not by raising issues of material fact, but rather arguing that judicial estoppel applies to prevent the Chapter 11 Trustee from recovering any payments it received postpetition.

In <u>Perry v. Blum</u>, 629 F.3d 1 (1st Cir. 2010), the United States Court of Appeals for the First Circuit explored the contours of the doctrine of judicial estoppel.  It stated:

The doctrine of judicial estoppel is equitable in nature. It operates to prevent a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding. <u>InterGen N.V. v. Grina</u>, 344 F.3d 134, 144 (1st Cir.2003). The purpose of the doctrine is to protect the integrity of the judicial process. *It is typically invoked when a litigant tries to play fast and loose with the courts.* <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); <u>Alt. Sys. Concepts</u>, 374 F.3d at 33; <u>Patriot Cinemas, Inc. v. Gen. Cinemas Corp.</u>, 834 F.2d 208, 212 (1st Cir.1987).

The contours of judicial estoppel are hazy. But even though its elements

22

cannot be reduced to a scientifically precise formula, <u>New Hampshire</u>, 532 U.S. at 750, 121 S.Ct. 1808, courts generally require the presence of three things before introducing the doctrine into a particular case. First, a party's earlier and later positions must be clearly inconsistent. <u>Id.</u>; <u>Alt. Sys. Concepts</u>, 374 F.3d at 33. Second, the party must have succeeded in persuading a court to accept the earlier position. <u>New Hampshire</u>, 532 U.S. at 750, 121 S.Ct. 1808; <u>Alt. Sys. Concepts</u>, 374 F.3d at 33. Third, the party seeking to assert the inconsistent position must stand to derive an unfair advantage if the new position is accepted by the court. <u>New Hampshire</u>, 532 U.S. at 751, 121 S.Ct. 1808; <u>Alt. Sys. Concepts</u>, 374 F.3d at 33.

<u>Perry v. Blum</u>, 629 F.3d at 8-9 (emphasis supplied).

In view of the Court's order with respect to the Debtor's Emergency Motion for Interim and Final Authority to Use Cash Collateral and Granting Adequate Protection, as well as the provisions of 11 U.S.C. § 1123(b)(5), the Court finds that Chapter 11 Trustee has failed to sustain her burden with respect to Count II. An open question exists as to how the parties construed the Court's order of May 18, 2010. The Court, however, rejects Rockland's assertion that judicial estoppel applies as it would appear that none of the parties were aware of the Discharge of the 2004 Mortgage until such time as the buyers of Mammola Way commissioned a title examination. Accordingly, this Court cannot find that the Trustee obtained some unfair advantage from her belief that the 2004 Mortgage was properly recorded, and there is no evidence that she "played fast and loose" with the Court. To the contrary, any payments made by the Chapter 11 Trustee to Rockland would have conferred no advantage to the estate.

E. <u>Count III</u>

In view of the complexity of the issues surrounding the discharge of the 2004

23

Mortgage and the absence of any evidence that Rockland intended to deceive the Chapter

11 Trustee, the Court concludes that the Chapter 11 Trustee failed to satisfy her burden as

the absence of genuine issues of material fact with respect to Count III.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Chapter 11

Trustee's Motion for Summary Judgment in part and denying it in part.  The Court grants

the Chapter 11 Trustee's Motion for Summary Judgment with respect to Count I and shall

schedule further hearings as to Counts II and III.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  June 26,  2012

24